SANTAMARINA & ASSOCIATES, P.C.
260 Madison Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 965-1678
Email: gil@santamarinalaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERARDO LAGUNA CHACON,<br><br>Plaintiff,<br><br>- against -<br><br>ALBERT COOKS and FISH CHIPS & GRITS CORP,<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Gerardo Laguna Chacon, by his attorneys, Santamarina & Associates, P.C., as against Albert Cooks ("Cooks") and Fish Chips & Grits Corp ("Fish Corp") (collectively, "Defendants"), alleges and sets forth as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL") to recover unpaid minimum and overtime wages, and for civil damages for violations of recordkeeping and notice requirements and other unlawful policies and practices, together with all applicable liquidated damages, prejudgment and post-judgment interest, attorneys' fees, and costs.

2. Plaintiff also brings this action for the rescission of a certain agreement purporting to create a partnership between Plaintiff and Cooks on the grounds of fraud and willful and substantial breach of contract and fiduciary duty, together with an award of money damages in the amount of $30,000.00 as reimbursement of amounts Plaintiff paid to Defendants in relying on such fraudulent agreement.

## PARTIES

**Plaintiff Gerardo Laguna Chacon**

3. Plaintiff is an adult individual residing in the State of New York, County of Bronx.

4. Between approximately August 1, 2022 and December 30, 2022, Plaintiff was employed by Defendants as a restaurant worker at a restaurant known as "Fat Mama's Fish Chips & Grits" and located at 231 East 169th Street, Bronx, New York (the "Restaurant").

5. Plaintiff is a covered employee within meaning of the FLSA and NYLL.

**Corporate Defendant**

6. Fish Corp is an active domestic corporation incorporated by Defendant Cooks on or about February 2, 2021, with its principal place of business located at the Restaurant.

7. Upon information and belief, at all times relevant to this action, Fish Corp has been a business enterprise engaged in interstate commerce that has annual gross sales in excess of five hundred thousand dollars ($500,000) per year.

8. At all times relevant to this action, Fish Corp regularly purchases and handles goods moved in interstate commerce.

9. Upon information and belief, from in or about the date of its incorporation through the present, Fish Corp has owned, operated, and controlled the Restaurant.

10. At all times relevant hereto, Fish Corp has been the tenant under the Restaurant's lease with its landlord.

11. At all times relevant hereto, all permits, certificates of authority, and authorizations to operate the Restaurant have been in the name of Fish Corp and/or Cooks.

12. At all relevant times, Fish Corp was and still is an "employer" within the meaning of the FLSA and NYLL.

**Owner/Operator Defendant**

13. Cooks is an adult individual residing in the State of New York, County of Bronx.

14. Cooks is and at all relevant times has been the sole owner and shareholder of Fish Corp and has possessed full operational control over Fish Corp and, in turn, the Restaurant.

15. At all times relevant to this action, Cooks has served as owner, manager, principal, or agent of Fish Corp, and through such corporate entity, has actively operated and managed the Restaurant as a joint or unified enterprise.

16. At all relevant times, Cooks was and still is an "employer" within the meaning of the FLSA and NYLL.

17. At all times relevant to this action, Cooks has (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined and controlled the rate and method of payment of employees' wages and compensation, and (4) maintained or was obligated to maintain employment records for Fish Corp.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331 (federal question) and the FLSA (29 U.S.C. § 216(b)), and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

19. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants maintain their corporate headquarters in and conduct business in this district.

## STATEMENT OF FACTS

*Cooks Induces Plaintiff to Execute a Fictitious Partnership Agreement, which Cooks had No Intention of Honoring, as a Ruse to Take Plaintiff's Money and Induce him to Work without Pay for Months*

20. Cooks, through the entity Fish Corp, has solely owned and operated the Restaurant since February 2021.

21. Seeking a capital investment and additional labor for the Restaurant, Cooks approached Plaintiff and proposed to him that they become partners in Fish Corp's business and reopen the Restaurant together under a new name, "The Fish House."

22. Cooks led Plaintiff to believe that in entering into a partnership relationship, Plaintiff and Cooks would be co-owners of the Restaurant and that the assets and operations of Fish Corp would be merged into the new partnership.

23. Relying on Cooks's representations, Plaintiff agreed to enter into a partnership relationship with Cooks and make an initial capital contribution of $25,000.00 to the partnership.

24. Cooks assured Plaintiff, orally and in writing, that this payment constituted an investment in Fish Corp.

25. The terms of the purported partnership were memorialized in a partnership agreement, dated as of July 19, 2022, entitled "Partnership Agreement: Fish Chips & Grits Corp." (the "Partnership Agreement"). A true and correct copy of the Partnership Agreement is annexed hereto as Exhibit A and is incorporated by reference herein.

26. The Partnership Agreement provided that the purpose was to "protect each owner's investment in Fish chips & Grits corp/The Fish House."

27. According to the Partnership Agreement, Cooks would own 52% of the "partnership," and Plaintiff would own 48%.

28. Cooks, as "majority owner," had final decision-making authority on all business, legal, and financial matters.

29. Relying on Cooks's representations regarding the nature and purpose of the transaction, Plaintiff paid Cooks $25,000.00 as his initial contribution to the partnership, which, pursuant to the Partnership Agreement, was to be "deposited into a [sic] individual capital accounts designated by both partners."

30. Under the Partnership Agreement, the total amount of his initial contribution was valued at $120,000.00, which was purportedly based not on any contributions of capital but rather on contributions he claimed to have "already made to the business for equipment, systems, business supplies, signage, start up costs, etc."

31. However, contrary to Cooks's representations, Cooks had not contributed any assets or made any other contributions to the "partnership."

32. The Partnership Agreement also purported to outline Cooks's and Plaintiff's respective roles in the partnership. Specifically, Plaintiff was responsible for "single-handedly" managing the Restaurant, "an absolute hands on role/ present at the premises/business."

33. Cooks controlled whether Plaintiff would earn a salary for his work at the Restaurant and the amount of any such salary.

34. The "partnership" allegedly created under the Partnership Agreement was for a fixed term of five years.

5

35. After the expiration of the term, Plaintiff would no longer have any interest in the assets of the partnership unless he obtained Cooks's consent and contributing an additional $150,000.00 to the partnership.

36. Despite the execution of an agreement denominated as a "partnership agreement," no partnership ever existed between Plaintiff and Cooks.

37. From the outset, the "partnership" was merely a ruse by which Defendants could obtain money and free labor from Plaintiff for the sole benefit of Defendants.

38. After executing the Partnership Agreement, Cooks, through Fish Corp, continued to solely own and operate the Restaurant. Cooks never changed the name of the Restaurant to "The Fish House" or filed or registered for authority to do business as that new name, as he was required to do under the Partnership Agreement. Nor did Cooks ever transfer any assets of Fish Corp or the Restaurant to the "partnership."

39. Fish Corp also remained listed as owner of the Restaurant on the Restaurant's lease, required licenses, permits, and tax documents.

40. Because the Restaurant has at all times been owned by Fish Corp and because Plaintiff never received any shares in Fish Corp, Plaintiff never actually had any ownership interest in the Restaurant or any "partnership" purportedly established in connection therewith.

41. Even assuming, *arguendo*, that the Partnership Agreement could be construed as establishing a valid partnership, Cooks materially breached such agreement and his fiduciary duties to Plaintiff by, *inter alia*, failing to file for authority for the Restaurant to do business as "The Fish House," failing to deposit Plaintiff's initial $25,000.00 contribution an "individual capital account as designated by both partners, failing to provide Plaintiff with an a an accounting of the partnership's profits on the 15th of each month; failing to provide Plaintiff with distribution

6

of profits on the 15th of each month, failing to open and maintain any contribution and distribution accounts or audit the same, and refusing to permit Plaintiff to access and review the "books of account" for the Restaurant maintained by Cooks.

***Plaintiff Works Between 60 and 84 Hours per Week at the Restaurant for Five Months as Defendants' Employee without Compensation***

42. After executing the Partnership Agreement, Plaintiff began working at the Restaurant under Defendants' supervision. His work primarily consisted of serving patrons, taking orders, and cooking.

43. Between approximately August 1, 2022 and December 30, 2022, Plaintiff worked as many as seven days a week and between 60 and 84 hours each week.

44. Specifically, from August 1, 2022 through September 4, 2022, Plaintiff worked 84 hours per week.

45. From September 5, 2022 through December 17, 2022, Plaintiff worked 72 hours per week from December 17, 2022 through December 30, 2022, Plaintiff worked 60 hours per week.

46. During the entire period between August 1, 2022 and December 30, 2022, Plaintiff received no compensation for his work at the Restaurant. He was not paid any wages and was not entitled to retain any tips he earned.

47. Nor did he receive any distributions of net profits from the Restaurant.

48. All proceeds from transactions at the Restaurant were paid to Fish Corp or Cooks.

49. At all times relevant to this Complaint, Plaintiff worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that he worked.

50. In addition, between August 1, 2022, and December 30, 2022, Plaintiff paid various vendors out-of-pocket sums totaling $5,000.00 to keep the Restaurant operating.

51. Thus, to date, Plaintiff expended a total of $30,000 in furtherance of the Restaurant.

52. Although the Partnership Agreement referenced the parties' sharing (unequally) costs and profits, in reality, all profits generated by the Restaurant were for the sole benefit of Defendants. There was no sharing of profits with Plaintiff.

53. Cooks has denied Plaintiff's repeated demands to access and review the books of account maintained by Cooks in connection with the "partnership."

## COUNT I
### (Recission of Partnership Agreement)

54. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

55. Defendants deliberately induced Plaintiff to enter into the Partnership Agreement and invest considerable time and labor in the Restaurant by making fraudulent misrepresentations of fact.

56. For example, prior to and simultaneously with the execution of the Partnership Agreement, Cooks represented to Plaintiff, orally and in writing, among other things, that Plaintiff's payment of $25,000.00 was an investment which would make him a co-owner of a 48% interest in the Restaurant, which would be renamed as "The Fish House," and that Cooks had contributed the Restaurant's existing equipment, supplies, and other assets, which were previously owned solely by Cooks in the name of Fish Corp, to the new partnership to be memorialized in the Partnership Agreement.

57. Plaintiff justifiably relied on Defendants' representations in executing the Partnership Agreement and contributing a total of $30,000.00 in capital and approximately 1,620 hours of labor to the Restaurant over the course of five months.

58. Plaintiff would not have taken the foregoing actions had it not been for Defendants' representations.

59. Unbeknownst to Plaintiff, Defendants' representations were false when made. In reality, Plaintiff was not and never became an owner of the Restaurant. At all times relevant hereto, Cooks, through the entity Fish Corp, remained the sole owner of all assets of the Restaurant. The Restaurant's equipment and assets that Cooks had allegedly contributed to the partnership had not been and never subsequently were transferred from Fish Corp to the new partnership.

60. Also, Fish Corp at all times remained listed as owner of the Restaurant on the Restaurant's lease, required licenses, permits and tax documents, and Cooks never registered the Restaurant for authority to do business as or otherwise operate under the name of "The Fish House."

61. Also, contrary to Defendants' misrepresentations, Plaintiff's "capital contribution" of $25,000 was not an "investment" in Fish Corp and was never deposited or transferred into an "individual capital account as designated by both partners." Upon information and belief, the funds were deposited into an account in the name and sole control of Defendants.

62. At the time he made the representations and the time the Partnership Agreement was executed, Defendants had no intention of creating a "partnership" or honoring the terms of the Partnership Agreement.

63. After execution of the Partnership Agreement, Plaintiff did not receive any rights or benefits as a "partner" of the Restaurant under the Partnership Agreement. Among other things,

9

Plaintiff did not receive a monthly accounting of the partnership's profits or a distribution of profits, as he was entitled to receive under the Partnership Agreement. Cooks also failed to maintain records or any contribution or distribution accounts in connection with the "partnership" and did not perform any of his duties listed in Section VIII of the Partnership Agreement.

64. Defendants intentionally prevented Plaintiff from discovering the truth regarding Cooks's fraudulent scheme by, *inter alia*, denying Plaintiff access to the "books of account" setting forth the Restaurant's operating expenses and profits, notwithstanding Plaintiff's repeated demands.

65. Cooks had exclusive knowledge of the truth regarding Defendants' fraud since he was the one responsible for changing the name of the Restaurant and amending all licenses and other documents accordingly and for maintaining the Restaurants' account records.

66. As a result of Defendants' material fraudulent misrepresentations and Cooks's substantial and willful violations of the Partnership Agreement and breaches of fiduciary duty, the very object of the parties in entering into a partnership agreement was defeated.

67. Plaintiff has no adequate remedy at law.

68. Plaintiff is entitled to rescission of the Partnership Agreement based on fraud and willful, material, and substantial breach of contract.

69. In connection with the rescission of the Partnership Agreement, Plaintiff is entitled to be reimbursed for the $30,000.00 he contributed pursuant to the Partnership Agreement.

## COUNT II
**(Violations of Fair Labor Standards Act – Unpaid Wages)**

70. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

71. At all times relevant to this action, Defendants were Plaintiff's "employers" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

72. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

73. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r), (s).

74. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff for the hours he worked.

75. Plaintiff is entitled to be paid at a rate not less than the applicable minimum wage.

*76.* Defendants failed to pay Plaintiff at the applicable minimum hourly rate as required under 29 U.S.C. §§ 201 *et seq.*

77. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §§ 201 *et seq.* shall be liable to the employees affected in the amount of their unpaid wage, and an additional equal amount as liquidated damages.

78. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA and violated Plaintiff's rights, as evidenced by failing to compensate Plaintiff at a rate not less than the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

79. As a result of the foregoing, Plaintiff has incurred substantial damages.

80. Accordingly, Plaintiff is entitled to recover unpaid wages, liquidated damages, attorneys' fees, costs, interest, and other compensation or damages to which Plaintiff may be entitled, in an amount to be determined by this Court.

## COUNT III
**(Violations of New York Labor Law – Unpaid Wages)**

81. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

82. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff for the hours he worked.

83. Plaintiff is entitled to be paid at a rate not less than the applicable minimum wage.

84. Defendants failed to pay Plaintiff at or above the applicable minimum hourly rate.

85. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL and violated Plaintiff's rights, as evidenced by failing to compensate Plaintiff at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

86. As a result of the foregoing, Plaintiff has incurred substantial damages.

87. Accordingly, Plaintiff is entitled to recover unpaid wages, liquidated damages, attorneys' fees, costs, interest, and other compensation or damages to which Plaintiff may be entitled, in an amount to be determined by this Court.

## COUNT IV
**(Violations of FLSA – Failure to Pay Overtime)**

88. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

89. At all relevant times, Plaintiff was a non-exempt employee entitled to be paid overtime compensation for all overtime hours worked.

90. Defendants employed Plaintiff for workweeks longer than 40 hours and willfully failed to compensate the Plaintiff for the time worked more than 40 hours per week, at a rate of at

least one and one-half times his regular hourly rate, in violation of the requirements of the FLSA, 29 U.S.C. § 207(a)(1).

91. Defendants failed to keep accurate records of time Plaintiff worked.

92. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional and otherwise lacking in good faith.

93. The FLSA, 29 USC § 216(b), provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and an additional equal amount as liquidated damages.

94. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory overtime rate of time and one half for all hours worked in excess of 40 hours per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff.

95. As a result of the foregoing, Plaintiff has incurred substantial damages.

96. Accordingly, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and other compensation or damages to which Plaintiff may be entitled, in an amount to be determined by this Court.

### COUNT IV
### (Violations of NYLL – Failure to Pay Overtime)

97. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

98. Plaintiff was a non-exempt employee entitled to be paid overtime compensation for all overtime hours worked.

99. In violation of NYLL §§ 190 *et seq.* and supporting regulations of the New York State Department of Labor, Defendants employed Plaintiff for workweeks longer than 40 hours

and willfully failed to compensate Plaintiff for the time worked more than 40 hours per week, at a rate of at least one and one-half times their regular hourly rate.

100. Defendants failed to maintain accurate records of time Plaintiff worked.

101. Defendants' violations of the NYLL, as described in this Complaint, have been willful and intentional and otherwise lacking in good faith.

102. As a result of the foregoing, Plaintiff has incurred substantial damages.

103. Accordingly, Plaintiff has incurred damages and is entitled to recover unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and other compensation or damages to which Plaintiff may be entitled, in an amount to be determined by this Court.

## COUNT V
### (Violation of NYLL – Failure to Provide Wage Statements)

104. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

105. Defendants have failed to supply Plaintiff with accurate statements of wages setting forth the dates of work covered; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, and required by NYLL § 195(3).

106. Defendants' violations of the NYLL were willful and intentional and otherwise lacking in good faith.

107. Due to the foregoing violations of the NYLL, Plaintiff has incurred substantial damages and is entitled to recover from Defendants, jointly and severally, statutory penalties equal

to $250 for each workday of the violation, or a total of $5,000, together with costs, attorneys' fees, and injunctive and declaratory relief pursuant to New York Labor Law §198(1-d).

## COUNT VI
### (Violation of NYLL – Failure to Provide Time-of-Hire Wage Notice)

108. Plaintiff repeats and reiterates each and every allegation set forth in the paragraphs above with the same force and effect as though fully set forth herein.

109. Defendants have failed to supply Plaintiff at the time of hiring with a written notice as required by NYLL § 195 in English or in the language identified by Plaintiff as their primary language, containing Plaintiff' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

110. Defendants' violations of the NYLL were willful and intentional and otherwise lacking in good faith

111. Due to the foregoing violations of the NYLL, Plaintiff has incurred substantial damages and is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to NYLL § 198(1-b).

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, as follows:

(a) Rescinding the Partnership Agreement and awarding Plaintiff a money judgment for the sum of thirty thousand ($30,000.00) dollars as reimbursement of Plaintiff's contributions under the "Partnership Agreement";

(b) Awarding Plaintiff money damages in the amount of unpaid wages/minimum wages and overtime wages;

(c) Awarding Plaintiff liquidated damages in an amount equal to one hundred percent (100%) of the total amount of unpaid wages/minimum wages and overtime wages;

(d) Awarding Plaintiff five thousand ($5,000) dollars based on Defendants' failure to provide wage statements as required under NYLL;

(e) Awarding Plaintiff five thousand ($5,000) dollars based on Defendants' failure to provide wage statements as required under the NYLL;

(f) Awarding Plaintiff punitive damages in an amount to be determined by this Court;

(g) Awarding Plaintiff prejudgment and post-judgment interest on all amounts awarded;

(h) Granting injunctive and declaratory relief as the Court in its discretion deems necessary and appropriate;

(i) Costs, disbursements, and attorney's fees incurred in maintaining this action; and

(j) Such other, further, and different relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Based on the foregoing, Plaintiff hereby demands a jury trial for all claims so triable.

Dated: New York, New York
April 12, 2023

SANTAMARINA & ASSOCIATES, P.C.

_____

By: Gil Santamarina, Esq.
*Attorneys for Plaintiff*
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 965-1678
gil@santamarinalaw.com

17